HAWKINS *against* STARK.

*ASSUMPSIT* for money had and received to the use of the plaintiff. Plea, *non assumpsit*, with notice of special matter to be given in evidence at the trial. The cause was tried at the *Albany* circuit, in *October*, 1820, before Mr. Justice *Woodworth*.

*John Bishop* testified, that he purchased oxen of the plaintiff, and *Morris Baker*, belonging to the society of *New Lebanon Shakers*, and gave the plaintiff his note for 250 dollars. That in 1819, he had the check of Mr. *Hillhouse*, for 125 dollars, and told the defendant he was going to get the money and take it to the *Shakers*, in a week or two. The defendant asked the witness to lend him the check, or the money, until he wanted it, and the witness, accordingly, let the defendant have it, and when called on for the money, he paid to the witness eight doubloons, which he represented to be of the value of 122 dollars, and three dollars in a bill. That he carried the money to the plaintiff, who received the gold and the bill, and endorsed the sum of 125 dollars on his note. That about ten days, or a fortnight afterwards, one *P.*, a member of the same society, brought back the gold to the witness, saying it was light, and not worth 122 dollars. The defendant, who happened to be passing the house of the witness, at the time, on being told that the *Shakers* had sent back the gold, because it was light, said, that he had not the money with him to exchange it, but that if the witness would bring the gold to him, he would give the witness good money for it. In a day or two afterwards, the witness carried the gold to the defendant to be exchanged, when the defendant said that he had no money, but should go to *New-York*, in a day or two, where he could

*B. received from S. eight doubloons of gold, at the value of 122 dollars, which he afterwards paid to H., who endorsed that sum on the note of B., to him. H., a few days afterwards, returned the doubloons to B., as being light, and not worth 122 dollars, and B. took them back, and returned them to S., who received them, and promised to have them exchanged, and pay to B. the 122 dollars, in other money. B. became insolvent, and in a settlement of accounts with S., he was credited the 122 dollars: Held, that an action for money had and received at the suit of H., against S., would not lie, to recover back the value of the doubloons; as the property in them had, by the re-delivery to B., become transferred to him, and the payment on the note, by his taking them back, virtually rescinded.*

pass the gold without any loss upon it, and, on his return, would give the witness other money for it. The witness, thereupon, left the gold with the defendant. Some days afterwards, the witness and *Baker* called on the defendant, who said, that he had sent the gold to *New-York* to be exchanged. The witness said, that he had often told the defendant that the money belonged to the plaintiff. Objections were made to the testimony of *Bishop*, and evidence was given to impeach his character, which was repelled by the testimony of other witnesses. He became insolvent in the spring of 1820, and in the inventory of his debts, stated 200 dollars as due to the *Shakers*, and 50 dollars to the defendant.

*Isaac Chase*, a witness for the defendant, testified, that in a settlement of accounts, during the last winter, between *Bishop* and the defendant, *B.* was allowed a credit for 122 dollars, for the gold returned by him to the defendant, and there was, besides, a balance due to the defendant, from him, of 102 dollars. That the gold was called *Shaker* money. An objection was made to the action, on the ground, that the society, or family of *Shakers*, held all their property in common; and it was proved, that the plaintiff, who was called the *dealing man*, transacted all the business of the society with the rest of the world, and that *Baker* was the *home man*, who transacted their business at home.

The judge charged the jury, that the action was properly brought in the name of the plaintiff. That from the testimony, the defendant received the plaintiff's money, and was answerable to him for it, and had no right to apply the money to the credit of *Bishop*, in a settlement of accounts with him. That *B.*, although somewhat impeached in character, stood corroborated, in all the material facts he had stated, by other witnesses, who had related the same parts of the transaction. The jury, accordingly, found a verdict for the plaintiff for 130 dollars, and five cents, damages.

A motion was made to set aside the verdict, and for a new trial.

*Cheever*, for the defendant, contended, 1. That although an action might lie in the name of the plaintiff on the

note ; yet, when the money was paid by the defendant, it became the property of the family, or society of *Shakers*, who holding it in common, should have been all joined.

2. That the gold having been returned to *Bishop*, who consented to take it back, the property in it reverted to *Bishop*, and was at his absolute disposal.

3. That when the defendant received back the gold from *B.* he became accountable to him alone for the amount, and had a right to apply it to his credit in the settlement of the account. 2 *Johns. Rep.* 549. 6 *Term Rep.* 53.

4. That the judge misdirected the jury.

*Van Vechten*, contra.

PLATT, J. delivered the opinion of the Court. When the plaintiff received the *doubloons*, in part payment of the note, they were undoubtedly his money. But after he returned them to *Bishop*, from whom he received them, and *Bishop* had agreed to take them back, the property of the plaintiff in those gold pieces was transferred to *B.*, and the payment on the note was virtually rescinded. By sending the *doubloons* back, the plaintiff elected not to consider them as his money. By accepting them when returned, *B.* made them his own, and virtually agreed to stand indebted to the plaintiff, as though no *doubloons* had been passed between them. *B.* had, then, a right to dispose of the gold as he pleased. It was his own money. And the plaintiff had a right of action against him for the whole amount of the note. There appears to be no privity, nor contract, express or implied, between the defendant and the plaintiff. *B.* re-delivered the doubloons to the defendant from whom he received them. They then became the property of the defendant, who was accountable for their value, to *B.*, not to the plaintiff. The action has been misconceived The verdict must, therefore, be set aside, and a new trial granted, with costs to abide the event of the suit.

New trial granted.